# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-2169 & 09-2186

SU YEUN KIM, on behalf of herself
and all others similarly situated, and
GINA POLUBINSKI, on behalf of herself
and all others similarly situated,

*Plaintiffs-Appellants*,

*v.*

CARTER'S INC.,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 09 C 706 & 08 C 5547—**Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 2, 2009—DECIDED MARCH 15, 2010

Before BAUER, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Our consumer culture thrives on hunting for the best deal. Wise to this fact, retailers try to lure customers with advertised sales that promise huge savings off the regular price. But the promised savings are false if a store simply recasts its regular price

as a discount off some higher, made-up, "suggested" price that no one ever pays. Plaintiffs Su Yeun Kim and Gina Polubinski claim that they were the victims of such deceptive pricing by Carter's, Inc., a children's clothing retailer, and have sued Carter's for damages under Illinois contract and consumer protection law. (Kim and Polubinski actually filed two separate but substantially identical complaints against Carter's, so we, like the district court, take up their cases together.) The district court dismissed the plaintiffs' complaint for failure to state a claim, and in this appeal, we accept as true the following facts alleged in the complaint. *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009).

Between June 2005 and March 2008, the plaintiffs purchased children's clothing from several Carter's retail outlets located in Illinois. The clothing had price tags listing a "Carter's Suggested Price," but Carter's frequently displayed signs in its stores advertising percent discounts off these suggested prices. For example, for a child's T-shirt with a suggested price of $16.00, Carter's might display a "30% off" sign next to the item and then charge a sales price of $11.20 at the register. Through these advertised percent-off savings, Carter's led costumers to believe that they were getting a great deal—30% off the regular price. The promised savings were a sham, the plaintiffs claim, because the "Suggested Prices" that Carter's puts on its price tags are fictitious; these suggested prices are substantially higher than what Carter's products actually sell for on a regular basis. Ignorant to this reality, the plaintiffs continued

buying Carter's products thinking that they were realizing significant savings.

The plaintiffs apparently caught on to the pricing scheme and brought a diversity suit against Carter's (a Delaware corporation with its principal place of business in Georgia) on behalf of themselves and a putative class of similarly situated Carter's customers. The plaintiffs claimed that Carter's practice of comparing actual sales prices to higher, fictitious "Carter's Suggested Prices" was both a breach of contract and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2. In response, Carter's passed over issues of class certification and moved to dismiss the plaintiffs' complaint on the merits for failure to state a claim. The district court granted Carter's motion (showing, in retrospect, that class certification might have been advantageous to Carter's, as the court's existing judgment in favor of Carter's binds only the individual plaintiffs Kim and Polubinski). On the contract claim, the court rejected the plaintiffs' theory that the parties' sales contract required Carter's to apply the advertised percent discounts to the actual sales prices of the clothing, rather than the "Carter's Suggested Prices" listed on the price tags. It "strains common sense," the court reasoned, to conclude that Carter's "30% off" signs meant "30% off an undisclosed 'actual regular price.'" As for the ICFA claim, the court concluded that the plaintiffs failed to allege the "actual damage" required for a private cause of action under the Act. *See* 815 ILCS 505/10a(a).

The plaintiffs appeal, and we review de novo the district court's dismissal of their complaint for failure to state a claim. *Sharp Elecs.*, 578 F.3d at 510.

Beginning with the plaintiffs' breach of contract claim, we conclude that Carter's fulfilled its obligations under the straightforward, everyday sales contract described in the complaint. Returning to the same T-shirt example above, Carter's advertised the sale of a clothing item at 30% off the $16.00 "Carter's Suggested Price," or $11.20. The plaintiffs selected the clothing and offered to purchase it at the advertised price, at which point Carter's accepted by taking the plaintiffs' money in exchange for possession of the clothing. *See Steinberg v. Chi. Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977) (describing the contract formed when a merchant accepts the customer's offer to purchase goods at an advertised price). The contract terms were memorialized in the sales receipt that the plaintiffs received at the cash register, which recorded the sale at the agreed price of $11.20. By charging this agreed price in exchange for ownership of the clothing, Carter's gave the plaintiffs the benefit of their bargain.

The plaintiffs protest that Carter's advertised sale at 30% off an inflated, fictitious "Suggested Price" led them to believe that they were paying 30% less than what other consumers usually paid, when in fact they were simply paying the full, regular price. In an attempt to realize their expected savings, the plaintiffs suggest that the contract should be interpreted so as to apply the advertised 30% discount to the $11.20 sales price that they actually paid, rather than the $16.00 "Suggested

Price" listed on the price tag. Under this interpretation, the contract price is only 70% of $11.20, or $7.84, and Carter's breached the contract by charging the plaintiffs the full $11.20.

The plaintiffs' interpretation of the contract is unreasonable. Courts interpret contracts with the goal of effectuating the parties' intent, giving contract terms their plain and ordinary meaning. *Hot Light Brands, L.L.C. v. Harris Realty Inc.*, 912 N.E.2d 258, 263 (Ill. App. Ct. 2009). Here, the parties intended to complete a sale in accordance with the plain terms of Carter's advertising—a T-shirt for 30% off the $16.00 "Carter's Suggested Price" displayed on the price tag. We agree with the district court that it "strains common sense" to conclude that the parties actually intended to apply the advertised 30% discount to some lower, undisclosed, regular price. The plaintiffs' interpretation renders meaningless the $16.00 "Carter's Suggested Price" term conspicuously displayed on the clothing's price tag, resulting in a very peculiar sales contract that lacks any disclosed price term. *See id.* (Courts "will not interpret the agreement in a way that would nullify provisions or would render them meaningless."). The only reasonable interpretation of this transaction is a contract to purchase clothing for the advertised price of $11.20. Carter's fulfilled its obligations under this contract.

Although Carter's didn't breach any contract, its allegedly deceptive price comparisons may violate the Illinois Consumer Fraud and Deceptive Business Practices Act. The ICFA declares unlawful "[u]nfair methods of

competition and unfair or deceptive acts or practices . . . in the conduct of any trade or commerce . . . ." 815 ILCS 505/2. A deceptive practice violates the ICFA even if it doesn't actually deceive or injure anyone, *see id.*, and the Illinois Attorney General has the power to investigate and enjoin such a practice without a showing of actual loss, *see id.* §§ 505/3-4, /7. A private party, however, must show "actual damage" in order to maintain an action under the ICFA. *Id.* § 505/10a(a).

Here, the plaintiffs have sufficiently alleged an ICFA violation by Carter's; regulations promulgated under the Act specifically identify this type of comparison between actual and fictitious "suggested retail price[s]" as an "unfair or deceptive act." Ill. Admin. Code tit. 14, § 470.250. The issue in this case is whether the plaintiffs' ICFA claim nonetheless fails for lack of actual damages.

The actual damage element of a private ICFA action requires that the plaintiff suffer "actual pecuniary loss." *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008). In the case of a private ICFA action brought by a business, the plaintiff may claim actual loss in the form of lost profits caused by a competitor's unfair trade practices. *See B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 F.3d 578, 580-81 (7th Cir. 2001) (finding that the plaintiff failed to show lost business or other financial injury from a competitor's deceptive price comparisons); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E.2d 981, 994-95 (Ill. App. Ct. 2008) (involving a failure to prove that a competitor's adoption of the plaintiff's trade name and deceptive advertising caused any

loss of customers or revenues). In the less typical case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of "the benefit of her bargain" by causing her to pay "more than the actual value of the property." *Mulligan*, 888 N.E.2d at 1197-98.

*Mulligan* involved comparative price deception similar to that alleged here. In that case, QVC listed its actual sales prices next to substantially higher but allegedly fictitious "retail values," creating the false impression that customers were getting a better deal than they really were. 888 N.E.2d at 1192-93. A customer lured in by this comparative pricing sued QVC under the ICFA, but the Illinois Appellate Court concluded that she had not suffered actual damages. The plaintiff "agreed to purchase . . . items for a certain price" and could not show "that the value of what she received was less than the value of what she was promised." *Id.* at 1197.

We think that this case is substantially similar to *Mulligan.* The plaintiffs agreed to pay a certain price for Carter's clothing, which they do not allege was defective or worth less than what they actually paid. Nor have the plaintiffs alleged that, but for Carter's deception, they could have shopped around and obtained a better price in the marketplace. *Cf. id.* at 1194, 1197 (noting that the plaintiff's own evidence showed that QVC's actual prices were lower than what the plaintiff would have paid in the marketplace); *DOD Techs. v. Mesirow Ins. Servs., Inc.*, 887 N.E.2d 1, 10 (Ill. App. Ct. 2008) (finding no actual damages where an insured failed to allege "that it would

have bargained for better insurance prices" had it known of an insurance broker's undisclosed commission costs). Like the plaintiff in *Mulligan*, and as concluded above in our discussion of the contract claim, the plaintiffs in this case got the benefit of their bargain and suffered no actual pecuniary harm. It follows that the plaintiffs' allegations fail to establish the actual damages element of their ICFA claim.

We do note one distinction between this case and *Mulligan*. In *Mulligan*, the plaintiff admitted to her suspicions that QVC's retail values were much higher than what people actually paid, allowing the court to rely in part on the fact that the plaintiff wasn't actually deceived by QVC's pricing scheme. 888 N.E.2d at 1199. By contrast, the plaintiffs here allegedly didn't know that Carter's rarely if ever sells its clothing at the suggested prices listed on the price tags. Still, it is not enough that Carter's price comparisons deceived the plaintiffs and induced them to buy Carter's clothing. *See id.* at 1197 ("Even if QVC's alleged inflated retail values may have induced Mulligan into altering her purchasing decision because of the represented *bona fide* savings, she suffered no actual pecuniary loss."). To sustain their private ICFA action, the plaintiffs must sufficiently allege actual damages, which, we conclude, they have failed to do.

Carter's did not breach its sales contract to sell the plaintiffs clothing at an agreed price, and Carter's alleged ICFA violation did not cause the plaintiffs actual damage.

AFFIRMED.