In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2831

PATRICK E. CAMASTA,

*Plaintiff-Appellant,*

*v.*

JOS. A. BANK CLOTHIERS, INC., also
known as JOS. A. BANK,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 7782 — **Amy J. St. Eve**, *Judge.*

ARGUED JANUARY 8, 2014 — DECIDED AUGUST 1, 2014

Before BAUER, WILLIAMS, and TINDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-Appellant Patrick E. Camasta
("Camasta") filed suit against Defendant-Appellee Jos. A. Bank
Clothiers, Inc. ("JAB"), alleging violations of the Illinois
Consumer Fraud and Deceptive Business Practices Act
("ICFA") in regard to certain JAB sale practices. JAB filed a
motion to dismiss Camasta's First Amended Complaint on the
basis of a failure to state a claim under which relief could be

granted. The district court granted JAB's motion and dismissed the lawsuit in its entirety with prejudice. We find that the district court did not abuse its discretion and affirm.

## I. BACKGROUND

JAB is a company that designs, manufactures, and sells men's tailored and casual clothing and accessories. JAB has thirty-one retail locations in Illinois. On July 27, 2012, Camasta went to a JAB retail location in Deer Park, Illinois. Prior to making his purchases, Camasta contends that he saw an advertisement about "sale prices" for certain items. Camasta did not specify when or where he saw the advertisements, what exactly the advertisements said, what the "sale prices" were, or what particular merchandise was eligible for the sale.

When Camasta visited JAB, customers were offered a promotion: "buy one shirt, get two shirts free." Camasta chose to take advantage of the offer and purchased six shirts for $167 without tax. Specifically, Camasta paid $79.50 for one shirt getting two similar shirts for free, and bought another shirt for $87.50 allowing him to receive an additional two similar shirts for free.

After this purchase, Camasta claims that he learned the JAB "sale" was not actually a reduced price, but instead that it was the JAB pattern and practice to advertise normal retail prices as temporary price reductions. Camasta claims that this sales technique was used in all of JAB's Illinois retail locations. He did not indicate when, where, or how he learned of the claimed fraudulent sales technique. Camasta asserts that but for his belief that the advertised sale was a limited time offer, he would not have purchased the six shirts and could have

purchased the shirts for a lower price at another store, or could have shopped around to obtain a better price elsewhere. Camasta provided no factual support for these assertions.

Camasta did not claim that he was denied the terms or pricing he saw advertised or that he did not receive the shirts he selected. He does not claim that there was anything about the shirts themselves that made them defective or caused him to change his opinion about their value. Camasta simply argues that his expectations for the discount he received were unrealized when he learned that the sale was not a temporary price reduction, but rather the normal retail price of JAB's merchandise.

On behalf of himself and a putative class, Camasta filed his first complaint against JAB on August 29, 2012. Camasta's two-count complaint accused JAB of violating both the ICFA and the Uniform Deceptive Trade Practices Act ("UDTPA") based on the company's "sales practice of advertising the normal retail price as a temporary price reduction." The putative class consisted of consumers who purchased any "on sale" item at any JAB retail location in Illinois. In his complaint, Camasta included a non-exhaustive list he compiled of JAB's advertised sales promotions and discounted prices between August 25, 2010, and August 24, 2012. The various purported sales were promoted through print, radio, television, direct mailings, e-mails, and in-store displays.

JAB removed the case to federal court and moved to dismiss Camasta's original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the original complaint, Camasta requested the court to apply the less-stringent pleading

standard of Federal Rule of Civil Procedure 8(a) because he claimed "unfair" conduct under the ICFA, not fraud. The district court rejected Camasta's request, granted JAB's motion to dismiss without prejudice, and gave Camasta leave to file an amended complaint to adequately state a claim.

Camasta filed his First Amended Complaint on behalf of himself and the putative class, claiming that JAB violated the ICFA based on unlawful sales practices and included the same list of JAB's advertised sales that he included in his original complaint. He offered no additional facts to support the heightened pleading requirement of Rule 9(b). Again, JAB moved to dismiss Camasta's complaint pursuant to Rule 12(b)(6). Camasta did not request leave to amend.

The district court found that Camasta's First Amended Complaint lacked "any analysis or explanation of how [Camasta] fulfilled Rule 9(b)'s requirements" and that he "failed to provide any specific details" in support of his claim under the ICFA. The district court identified five primary reasons for the deficiency of Camasta's claim: (1) Camasta did not provide any additional details about the content of the advertisement he saw the day he purchased shirts from JAB beyond the claim that merchandise was being offered at "sale prices" and was "on sale;" (2) he vaguely asserted that he learned that the sale was not a temporary price reduction, but failed to give any particulars as to how that knowledge was brought to his attention; (3) he provided insufficient evidence to show that the claimed sales technique employed by JAB was part of a general sales practice utilized by JAB; (4) the claim that he suffered "actual damage" was speculative and conclusory because he did not allege that he paid more for the shirts than

their actual value; and (5) his request for injunctive relief failed to allege future harm from JAB's conduct.

The district court dismissed Camasta's First Amended Complaint with prejudice. Camasta timely appealed to this court.

## II. DISCUSSION

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Revolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A district court's decision to grant a motion to dismiss is reviewed *de novo. Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Even so, the complaint does not need to state all possible legal theories. *Dixon v. Page*, 291 F.3d 485, 486–87 (7th Cir. 2002).

Determining whether a complaint states a claim upon which relief may be granted is dependant upon the context of the case and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While all well-pled facts are taken as true and viewed in a light most favorable to the plaintiff, *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742–43 (7th Cir. 2010), "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Since Camasta's claim was of fraud under the ICFA, the sufficiency of his complaint is analyzed under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading "ordinarily requires describing the who, what, when, where, and how of the fraud." *Anchorbank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (internal quotations omitted). One of the purposes of the particularity and specificity required under Rule 9(b) is "to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

Camasta argues that he should only have to meet the less-stringent pleading standard of Rule 8(a). This less stringent pleading standard provides that "[a] complaint need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief." *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963 (7th Cir. 1992); Fed. R. Civ. P. 8(a)(2). However, in analogous cases we have required the heightened pleading standard of Rule 9(b). In *Pirelli*, the plaintiff argued that the pleading requirement of Rule 8(a) should apply to his claim because he included an allegation of fraudulent conduct that was "unfair" under the ICFA. 631 F.3d at 446. We upheld the district court's dismissal of the complaint for failing to comply

with the requirements of Rule 9(b) because "[a] claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate 9(b)'s heightened pleading requirements." *Id*. at 446–47 (citing *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Here, Camasta claims that he was induced to purchase shirts from JAB by their "fraudulent sales practices" that "mislead," "misrepresent," and "defraud." While Camasta adds language of unfairness, his allegations of "unfair practice" are clearly premised upon the primary claim that JAB utilized a fraudulent sales technique. Simply adding language of "unfairness" instead of "misrepresentation" does not alter the fact that Camasta's allegations are entirely grounded in fraud under the ICFA. Based on our holding in *Pirelli*, we find the heightened pleading requirement of Rule 9(b) applies.

### A. Rule 9(b) Pleading Requirements

The district court identified multiple deficiencies in Camasta's complaint. In response, Camasta claims that the only content at issue related to JAB's advertisement was that it said merchandise was being offered at "sale prices" and was "on sale." While Rule 9(b) "does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (citing *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992). We do

not require that Camasta provide the precise date, time, and location that he saw the advertisement or every word that was included on it, but something more than Camasta's assertion that "merchandise was offered at 'sale prices'" is needed.

Camasta argues that the precise details of the sale are "irrelevant" because his sales receipt is sufficient evidence of the content of the advertisement. A sales receipt provided to a consumer after a purchase cannot show what was supposedly advertised; the representation must have been made to him *before* the purchase of the merchandise. *Verb v. Motorola, Inc.*, 672 N.E.2d 1287 (Ill. App. Ct. 1996). Camasta's statement and sales receipt are insufficient to substantiate a finding of a "deceptive or unfair act or promise" by JAB: a requisite condition of an allegation of fraud under the ICFA.

Camasta also argues that he should not be required to further detail how he subjectively learned that the sales were not temporary price reductions. This argument fails for the same reasons given above. While we allow Camasta some flexibility in the factual support required for his claim, a plaintiff alleging fraud "does not have unlimited leeway" in satisfying the particularity requirement of Rule 9(b) when the circumstances are pleaded solely on "information and belief." *Pirelli*, 631 F.3d at 442.

Camasta then points to the list he compiled of apparent sales conducted by JAB between August 2010 and August 2012 to assert that he has proven "context" that supports an inference that JAB participates in the "pattern and practice of advertising" sale prices that are simply regular prices since the merchandise is always "on sale."

Again, Camasta's sparse allegations fail to satisfy the particularity requirement of Rule 9(b). "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman*, 172 F.3d at 469–70. Camasta's admittedly non-exhaustive list illustrates that JAB offered a number of sales promotions to its customers over a two-year period, but it does not show a constant or perpetual sale of any particular merchandise. We agree with the district court that Camasta's list actually reduces the effect of his argument because it shows that there were a variety of sales for different periods of time, under different terms, and that included different types of merchandise. Moreover, the fact that JAB has frequent sales of various items does not support an inference that those sales were fraudulent or deceptive.

Camasta argues that his claim is supported by the New York Attorney General's investigation of JAB's sales practices that occurred in 2003 and 2004. The investigation resulted in JAB entering into an "Assurance of Discontinuance" and paying a $475,000 fine in September 2004. In the Assurance of Discontinuation, the New York Attorney General took the position that JAB was not selling its merchandise at a regular price and instead had items that were "perpetually 'on sale.'" The Attorney General stated that he believed those practices had the ability to mislead customers into thinking they were receiving a temporary price reduction when they in fact were not. JAB entered into the agreement stating specifically that

"[JAB] is willing to enter into this Assurance without admitting to the Attorney General's finding or to any violation of law."

The 2004 Assurance of Discontinuation that JAB entered into does not affect the outcome of this case. We agree with the district court that Camasta failed to explain how the New York advertising practices that were the subject of the 2004 investigation are the same or similar to practices employed by JAB in Illinois between 2009 and 2012. Camasta argues that he sufficiently proved this simply by stating in his complaint that the practices were "the exact type of fraudulent sales practices complained of here." While the facts of Camasta's complaint are viewed in his favor, simply stating that the sales practices are the same in two different states during two different time periods without any factual support is insufficient to satisfy the pleading requirement. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions.") (internal citation omitted).

In short, the district court correctly concluded that Rule 9(b) applied and that its requirements were not satisfied by Camasta's First Amended Complaint.

## B.  Actual Damages

The intent of the Illinois Consumer Fraud and Deceptive Business Practices Act is "to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416–17 (2002)). In order to state a claim under the ICFA, a plaintiff must show: "(1) a

deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

When the plaintiff is a private party as Camasta is here, an action brought under the ICFA requires the plaintiff to show he suffered "actual damage" as a result of the defendant's violation of the act. 815 ILCS 505/10a; *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1196 (Ill. App. Ct. 2008). In a private ICFA action, the element of actual damages "requires that the plaintiff suffer actual pecuniary loss." *Kim*, 598 F.3d at 365 (internal citation omitted). The district court correctly found that Camasta failed to allege facts showing he suffered actual damage.

Central to Camasta's argument is the claim that the advertised "sale prices" were in fact just the normal or regular retail prices being promoted as temporary price reductions. Camasta claims that this sales technique encourages a sense of urgency and makes customers feel "pressure" to make purchases before an expected deadline. However, Camasta failed to provide any evidence that he paid more than the actual value of the merchandise he received.

Without factual support or justification, Camasta asserts that he could have shopped around and found the same shirts for a lower price. Yet, he fails to assert that he did, in fact, shop around and find the same shirts for a lower price. The district court found Camasta's statement to be "speculative

and conclusory" and insufficient to prove actual damages. We agree.

In *Kim*, this court affirmed the district court's dismissal of a claim for a violation of the ICFA when the plaintiffs failed to prove actual damages. 598 F.3d at 365. The defendant clothing retailer used price tags displaying "suggested prices," frequently accompanied by an advertised percentage discount off of that amount. *Id.* at 363. The plaintiffs argued that these advertisements gave consumers the impression that they were receiving a "deal" on the merchandise when, in fact, the "suggested prices" were inflated in order to sell products at a regular price without actual savings. *Id*. This court, however, denied plaintiffs' claim because it found that they "got the benefit of their bargain." In other words, the plaintiffs agreed to pay a certain price for the defendant's merchandise, did not allege the merchandise was defective or worth less than what they actually paid, and did not allege that they could have shopped around and found a better price in the marketplace. *Id*. at 365–66.

Camasta argues that he proved actual damage by stating that he could have "shopped around and obtained a better price in the marketplace." This statement alone cannot support a claim of actual damage. As this court found in *Ackerman*, Camasta is required to at least conduct a minimal "pre-complaint investigation" to gather sufficient factual information to support his fraud claim. 172 F.3d at 469. While Camasta claims that he had an "impractical ability to comparison shop," there is no reason why he could not have gone to other stores after his purchase from JAB to discover whether he could have found a better price for similar shirts elsewhere.

Camasta then claims he paid more than the shirts were worth because, when all reasonable inferences are viewed in his favor, he essentially paid $167 plus tax for two shirts: one for $87.50 and one for $79.50. Since he actually received six shirts for that price, Camasta claims that a reasonable inference is to divide the price of each shirt by three to get the true value of the shirts: that is, the first type of shirt is valued at $29.16 and the second at $26.50. Camasta claims, without any factual support, that he paid more than the value of the shirts when he spent $87.50 on a shirt worth $29.16 and spent $79.50 on a shirt worth $26.50. The prices Camasta contends are the true values of the shirts are mere guesses void of any substantial analysis. Even under Rule 8(a), "naked assertions devoid of further factual enhancement" are insufficient to support a claim. *Iqbal*, 556 U.S. at 678 (internal citations omitted). Without any facts to support his conclusory assertions of actual damage, Camasta has not sufficiently pleaded that he paid more than the actual value of the merchandise he received.

## C. Injunctive Relief

Finally, Camasta makes a claim for injunctive relief. Camasta argues that the district court improperly dismissed his claim for injunctive relief under the ICFA because he sufficiently alleged in another case that the conduct in question was deceptive. *Camasta v. Omaha Steaks Intern.*, No. 12 CV 08285, 2013 WL 4495661, at *8 (N.D. Ill. Aug. 21, 2013). While Camasta successfully alleged a deceptive sales practice in that case, he failed to do so here. Absent a showing of a violation of the ICFA, a plaintiff is not entitled to injunctive relief. *See, e.g., B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 76 F. Supp. 2d 868, 873 (N.D. Ill. 1999).

Likewise, Camasta cannot obtain injunctive relief under the UDTPA because he failed to sufficiently allege that JAB's conduct will likely cause him harm in the future. *See Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 857 (Ill. App. Ct. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future."). Camasta's claim is based solely on the conjecture that because JAB harmed him in the past, they are likely to harm him in the future. However, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974). Since Camasta is now aware of JAB's sales practices, he is not likely to be harmed by the practices in the future. Without more than the speculative claim that he will again be harmed by JAB, Camasta is not entitled to injunctive relief.

### III. CONCLUSION

The district court's dismissal of Camasta's First Amended Complaint is AFFIRMED.