Elaine E. Bucklo, United States District Judge
Before me is Dale Sabo's third iteration of a putative class complaint asserting consumer fraud based on defendant's allegedly deceptive labeling of its pet food products as "Made in the USA." I dismissed plaintiff's First Amended Complaint (the "FAC") on the ground that it failed plausibly to allege actual damages because it offered no more than speculation to support his claim that he paid more for defendant's product because it was labeled "Made in the USA" than he would have paid for a comparable product not so labeled. Plaintiff's Second Amended Complaint ("SAC") does not meaningfully cure this defect. Accordingly, I grant defendant's motion to dismiss with prejudice and deny as moot its motion to strike plaintiff's class allegations.
As my previous decision explained, ICFA claims sounding in fraud must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). Camasta v. Jos. A. Bank Clothiers, Inc. , 761 F.3d 732, 737 (7th Cir. 2014). Among other elements of an ICFA claim, plaintiff must plead and prove actual damages, which is to say "actual pecuniary loss." Kim v. Carter's Inc. , 598 F.3d 362, 365 (7th Cir. 2010). I concluded that the FAC failed to allege any non-speculative basis for inferring that plaintiff "paid more for defendant's pet food products because he believed they were American made," or that "comparable pet food products that lacked domestic-source designations were less expensive." Mem. Op. and Order of 4/21/2017 at 8. The SAC adds nothing of substance in this respect. Plaintiff again insists that "surveys and scholarship" suggest that American consumers are "willing" to pay more for American-made products, but like the FAC, the SAC fails to bridge the gap between what consumers are "willing" to pay when purchasing appliances, footwear, electronics, or textiles (the industries highlighted in the articles plaintiff cites) and what he and the putative class actually paid when purchasing defendant's pet food. Still conspicuously absent from the *1042 complaint are any straightforward assertions about the price of defendants' products; the price of comparable products not labeled "Made in USA" (if, indeed such products exist, for the SAC does not allege that they do); or any other measurable criteria for comparing the position plaintiff and the class would have been in absent the alleged fraud with the position they were in as a result of their reliance on defendant's "Made in USA" representation. Such a comparison, however, is required to establish actual damages under ICFA. See Frye v. L'Oreal USA, Inc. , 583 F.Supp.2d 954, 957 (N.D. Ill. 2008) (actual damages entitle a plaintiff "to be placed in the same financial position she would have been [in] absent the misrepresentation") (examining Price v. Philip Morris, Inc. , 219 Ill.2d 182, 302 Ill.Dec. 1, 848 N.E.2d 1, 56-57 (2005) (Karmeier, J., concurring)).
The allegation that plaintiff introduces in the SAC that he "would not have purchased the dog food at the price he paid" is only part of the equation. Presumably, plaintiff and the absent class members still would have had pets to feed. Indeed, the FAC alleged explicitly that plaintiff "needs to continue buying food for his dogs." FAC ¶ 22. Would they have purchased products with the same nutritional profile as defendants' products, (i.e., with "added vitamins...for wellbeing") but with foreign-sourced vitamins and no "Made in USA" label? As noted above, the SAC does not say whether such products exist in the market, much less does it allege that they are available at a lower price. For all that the SAC reveals, all dog foods touting "added vitamins...for wellbeing" are priced similarly to defendants' product, regardless of whether their labels include domestic-source representations. If that is the case, plaintiff plainly cannot show that he is in a worse financial position for having bought defendants' products than he would have been had he purchased comparable products that did not bear "Made in USA" labels. Alternatively, if (as the SAC seems to suggest) plaintiff would not have bought any pet food that he knew contained foreign-sourced ingredients, see SAC at ¶ 22, and would have foregone the "added vitamins" in defendants' products in favor of a purely domestic product, then he must suggest some basis for inferring that such products (again assuming they are available), are lower-priced than defendants'.
It is true that in McDonnell v. Nature's Way Products, LLC , No. 16 C 5011, 2017 WL 1149336, at *3 (N.D. Ill. Mar. 28, 2017), the court concluded that the plaintiff's "relatively bare-bones" allegations that she "paid more for the products than they were actually worth" and "would not have purchased the vitamins at the price she paid if she had known that they contained foreign-sources vitamins" were sufficient to plead actual damages. It is not clear from the court's treatment of the issue whether the complaint offered any factual basis to support the plaintiff's estimation of the products' worth, or for supposing that the plaintiff suffered an actual pecuniary loss as a result of the alleged fraud. Perhaps because the product in McDonnell was a vitamin supplement labeled "Made in USA" but alleged to contain foreign-sourced vitamins -i.e., the essence of the product-the court thought it plausible that a misrepresentation about the product's origin resulted in an inflated sales price as compared to similar products not labeled American-made. In this case, however, where the allegedly foreign-sourced vitamins are a tiny component of the pet food products, and the complaint tells us nothing about the price of similar pet food products available on the market, the inference that plaintiff spent more on defendants' products because he believed they were American made than he would have spent otherwise requires more than unsubstantiated allegations about the *1043 products' "worth" and the statement that plaintiff would not have bought the products (either at all or at the price he paid; the complaint offers both possibilities) in the absence of the alleged fraud. Even coupled with references to "surveys and scholarship" about consumer preferences in other industries, those allegations do not, on the facts here, raise the inference that plaintiff suffered an actual pecuniary loss "above the speculative level." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also Camasta , 761 F.3d 732 at 740 (allegations that consumer paid more than products were worth and could have "shopped-around" for a better price require factual foundation to state actual damages under ICFA).
For the foregoing reasons, defendant's motion to dismiss with prejudice is granted. Defendant's motion to strike class allegations is denied as moot.