In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 19-1032

CLARISHA BENSON, *et al.*,

*Plaintiffs-Appellants*,

*v.*

FANNIE MAY CONFECTIONS BRANDS, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 C 3519 — **Sara L. Ellis**, *Judge*.

---

ARGUED SEPTEMBER 4, 2019 — DECIDED DECEMBER 9, 2019

---

Before WOOD, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. Proving that almost anything can give rise to litigation, this case concerns chocolates that Clarisha Benson and Lorenzo Smith purchased at their local Fannie May stores in Chicago. Upon opening their boxes of candy, Benson and Smith were dismayed to find that the boxes were not brimming with goodies. Far from it: the boxes appeared to be only about half full. Believing that they had been duped,

they sued Fannie May on behalf of themselves and a putative class, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1–505/12, and asserting claims for unjust enrichment and breach of implied contract. The plaintiffs contend that Fannie May's boxes of chocolate contain needless empty space, and that this practice misleads consumers. After allowing Benson and Smith to amend their complaint, the district court granted Fannie May's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint with prejudice. The court found that the plaintiffs had not adequately pleaded a violation of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301–399, and that the FDCA preempted their state-law claims. We affirm the judgment, though on other grounds.

**I**

Each plaintiff purchased an opaque, seven-ounce box of Fannie May's chocolate for $9.99 plus tax. Benson purchased Fannie May's Mint Meltaways, and Smith purchased Fannie May's Pixies. (Since their assertions are otherwise identical, we generally refer in the remainder of this opinion only to Benson, understanding that Smith is also a putative named plaintiff and that there are class allegations.) Although the boxes accurately disclosed the weight of the chocolate within (seven ounces) and the number of pieces in each box (ascertainable by multiplying the serving size times the number of servings per container), the boxes were emptier than each one had expected. The box of Mint Meltaways contained approximately 33% empty space, and the box of Pixies contained approximately 38% empty space. The *cognoscenti* call this empty space "slack-fill."

In the amended complaint, Benson alleges that some of the empty space serves no functional purpose and instead misleads consumers into believing that they are purchasing more chocolate than they actually receive. The complaint notes that Fannie May's fourteen-ounce boxes contain a smaller percentage of slack-fill. Benson insists that she would not have purchased the chocolate if she had known that there was so much empty space inside the box. She seeks compensation based on the percentage of nonfunctional slack-fill in each box.

## II

We consider the dismissal of a complaint for failure to state a claim *de novo*. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A

At the outset, there was some question whether diversity jurisdiction existed pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because the complaint identified Fannie May as an Illinois corporation and the named plaintiffs as Illinois citizens, and alleged only that at least one (unidentified) class member was a citizen of a state other than Illinois. As the district court recognized, the latter allegation was insufficient. But another filing then revealed that Fannie May is a Delaware corporation. The amount in controversy exceeds $5,000,000, and so CAFA supports jurisdiction.

Benson first attacks the district court's conclusion that her state-law claims were preempted by the FDCA and so had to be dismissed as a matter of law. Under the FDCA, a food "shall be deemed to be misbranded" if "its container is so made, formed, or filled as to be misleading." 21 U.S.C. § 343(d). Containers that include slack-fill—"the difference between the actual capacity of a container and the volume of product contained therein"—are misleading if consumers cannot fully view the contents and if the slack-fill is nonfunctional. 21 C.F.R. § 100.100(a). Slack-fill is nonfunctional if it cannot be justified by any of the following reasons: (1) protection of the contents of the package; (2) the requirements of the machines used to enclose the contents in such package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function; (5) the container is reusable, part of the presentation of food, and has value that is significant and independent of its function to hold food; or (6) the inability to increase the level of fill or reduce the package size because, for example, the size is necessary to meet food labeling requirements or discourage theft. See *id.* § 100.100(a)(1)–(6).

The FDCA does not create a private right of action. *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011). Even so, plaintiffs are entitled to seek relief pursuant to related state-law causes of action. See *id.* The latter right, however, is tightly circumscribed by the FDCA's express preemption of state-law theories that impose requirements "not identical" to its own requirements. See 21 U.S.C. § 343-1.

The district court determined that Benson could avoid dismissal of her state claims on the basis of preemption only if she pleaded that the slack-fill in the Mint Meltaway and Pixie

boxes was nonfunctional under 21 C.F.R. § 100.100(a)(1)–(6). Preemption, however, is "an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). This is not one of those cases in which the plaintiff has pleaded herself out of court, and so the difference between Rules 12(b)(6) and 12(c) cannot be disregarded. See, *e.g.*, *Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The district court thus erred by penalizing Benson for failing to anticipate an affirmative defense in her complaint and dismissing the action based on FDCA preemption.

B

With that much established, the question remains whether Benson sufficiently pleaded the elements of her state-law theories, starting with the contention that Fannie May violated the ICFA. The ICFA is "a regulatory and remedial statute intended to protect consumers … against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17 (2002). To prevail on a claim under the ICFA, "a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).

The statute allows a plaintiff to premise her claim on either deceptive conduct or unfair conduct (or both), but "the two categories have different pleading standards." *Id.* at 738. "If the claim rests on allegations of deceptive conduct, then [Federal Rule of Civil Procedure] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." *Id.* This means as a practical matter that she must identify the "who, what, when, where, and how" of the alleged fraud. *Id.* On the other hand, Rule 9(b)'s heightened pleading standard does not apply to an allegation of unfair conduct, because fraud is not a required element under that branch of the statute. *Id.* at 739.

Benson's complaint alleges that the slack-fill in Fannie May's chocolate boxes is both deceptive and unfair. We therefore consider both possibilities. Starting with the first category, a practice is deceptive "if it creates a likelihood of deception or has the capacity to deceive." See *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). Courts apply a "reasonable consumer" standard to analyze the likelihood of deception. See *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015). "[W]hen analyzing a claim under the ICFA, the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Benson asserts that the nonfunctional slack-fill in Fannie May's opaque packaging is deceptive because it causes consumers to believe that the boxes contain more chocolate than they actually do. The complaint describes the percentage of slack-fill in each seven-ounce box and contrasts Fannie May's fourteen-ounce boxes, which contain a smaller percentage of slack-fill, to show that unused capacity in the smaller box is

not entirely functional. The complaint asserts that reasonable consumers rely on the size of packaging to infer the quantity of product that they are purchasing, so any extra slack-fill misleads consumers. Someone might think, for instance, that a box of a certain size would contain enough candy for the whole office group, only to be chagrined when it is opened and half the people leave empty-handed. These allegations describe the "who," "what," and "how" of the alleged fraud with particularity. The complaint also alleges the "where" and "when" of the fraud. The "when" is May 10, 2014, to the present, and the "where" is in Illinois stores and online.

Fannie May complains that Benson left out information that would have shown that no deception was possible. The information on the outside of the boxes, which as we said discloses the net weight and number of pieces inside the boxes, eliminates the possibility that a reasonable consumer would be deceived. (The person treating her office group, it says, has no one but herself to blame if she thought the box would be enough for everyone; she should have paid attention to the number of pieces it held.) Fannie May also points out that the receipts Benson and Smith received disclosed the weight and price of each box of chocolate.

This is another argument that cries out for an answer and a Rule 12(c) motion rather than a motion to dismiss, but in any event, at this stage of the litigation, we cannot conclude that the information on the boxes is enough as a matter of law to avoid a finding of deception. The Food and Drug Administration takes the position that "the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading." Misleading Containers; Nonfunctional Slack-

Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100). Moreover, Benson's assertion that she and others attach importance to the size of a package is enough for now to indicate that a "reasonable consumer" does so too. She therefore did enough to plead a deceptive act.

Benson also asserted that the packaging of the Mint Meltaways and Pixies is covered by the ICFA's "unfair acts" prohibition. Illinois courts look to three considerations to ascertain whether conduct is unfair under the ICFA: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill. 2d at 417–18. A court may find unfairness even if the claim does not satisfy all three criteria. *Id.* at 418. A practice might be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.*

In the complaint, Benson alleges that Fannie May engaged in unfair acts or practices by including needless slack-fill in its chocolate boxes, and that this amounted to a misrepresentation of the quantity of chocolate within. This practice, she contends, constitutes false advertising, which is unethical and offends public policy. Benson also asserts that the unfair practice seriously injures consumers by making them believe that they are receiving more chocolate than the actual amount within each box. As we have observed before, "an unfair-practices claim has no fraud element and therefore is not subject to a heightened pleading standard." *Vanzant*, 934 F.3d at 739. Benson's allegations of unfair practices meet the federal notice-pleading standards because they claim that Fannie May "engaged in unfair conduct and aver[] facts that, if proven, make relief more than merely speculative." See *Windy*

*City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008).

C

So far, so good. But Benson has one more hurdle: a private plaintiff suing under the ICFA must show that she "suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739. In other words, she must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss. *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Actual loss may occur "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.*

In *Kim*, the plaintiffs purchased clothing from several stores that advertised their wares as being discounted from "Suggested Prices." *Id.* at 363. The "Suggested Prices," however, were fictitious and much higher than anything customers actually paid. *Id.* Nevertheless, we found that the plaintiffs had suffered no concrete harm because they had not alleged that the clothing "was defective or worth less than what they actually paid" or that "they could have shopped around and obtained a better price in the marketplace." *Id.* at 365–66.

The same is true here. Neither Benson nor Smith has alleged that the seven ounces of chocolate in the box were worth less than the $9.99 that they paid. They do not claim that the Mint Meltaways or Pixies were defective or that they could have acquired them for a better price. Instead, both plaintiffs assert that they would not have purchased the candy if they had known the amount of slack-fill, and they seek damages in

the amount of the percentage of the purchase price equal to the percentage of nonfunctional slack-fill.

But this assumes that they were injured, and that assumption is inconsistent with *Camasta*. There the plaintiff's allegation of actual damages fell short, even though he said that he "would not have purchased" shirts absent deceptive advertising, because he had not alleged that he paid more than "the actual value of the merchandise he received." *Camasta*, 761 F.3d at 735, 740. In our case, Benson and Smith never said that the chocolates they received were worth less than the $9.99 they paid for them, or that they could have obtained a better price elsewhere. That is fatal to their effort to show pecuniary loss. Moreover, their request for damages based on the percentage of nonfunctional slack-fill is quite vague. They do not explain how a percentage refund of the purchase price based on the percentage of nonfunctional slack-fill corresponds to their alleged harm. They thus failed to raise a plausible theory of actual damage, and so their allegations that Fannie May violated the ICFA were properly dismissed on the pleadings.

### III

Benson also seeks restitution for unjust enrichment. Under Illinois law, there is no stand-alone claim for unjust enrichment. See *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 492 (1995), relying on *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 137 Ill. App. 3d 84, 90–91 (1985). Instead, Illinois courts describe it as "a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence … ." *Charles Hester*, 137 Ill. App. 3d at 90–91. The request for relief based on unjust enrichment is therefore "tied to the fate of the claim under the [ICFA]." *Vanzant*, 934 F.3d at 740.

Because Benson failed to state a claim under the ICFA, she also failed to state a claim for unjust enrichment.

Lastly, Benson alleges that Fannie May breached an implied contract for the sale of the chocolate boxes by violating the duty of good faith and fair dealing. But "there can be no contract implied in law where an express contract or a contract implied in fact exists between the parties and concerns the same subject matter." *Marcatante v. City of Chicago, Ill.*, 657 F.3d 433, 443 (7th Cir. 2011). Here, the parties entered into a "straightforward, everyday sales contract" in which the buyers "selected the [chocolate] and offered to purchase it at the advertised price, at which point [Fannie May] accepted by taking the plaintiffs' money in exchange for possession of the [chocolate]." See *Kim*, 598 F.3d at 364. The "contract terms were memorialized in the sales receipt[s] that [Benson and Smith] received at the cash register." See *id.* The receipts show the specific products (Mint Meltaways and Pixies), the quantity (seven ounces), and the price ($9.99). The receipts embody the contract between the parties, and it concerns the identical subject-matter of the alleged implied contract. State law does not recognize an implied contract in this situation, and so that part of the case was also properly dismissed.

We AFFIRM the judgment of the district court.