**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AARON LEIGH-PINK; TANA EMERSON, *Plaintiffs-Appellants*, <br><br> v. <br><br> RIO PROPERTIES, LLC, *Defendant-Appellee.* | No. 19-17556 <br><br> D.C. No. 2:17-cv-02910-GMN-VCF <br><br><br> ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF NEVADA |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, District Judge, Presiding

Argued and Submitted December 10, 2020
Pasadena, California

Filed March 3, 2021

Before: Ronald M. Gould and Ryan D. Nelson, Circuit
Judges, and Brian M. Cogan,[*] District Judge.

Order

---

[*] The Honorable Brian M. Cogan, United States District Judge for
the Eastern District of New York, sitting by designation.

### SUMMARY[**]

#### Certification to Nevada Supreme Court

The panel certified to the Nevada Supreme Court the following question:

> For purposes of a fraudulent concealment claim, and for purposes of a consumer fraud claim under NRS § 41.600, has a plaintiff suffered damages if the defendant's fraudulent actions caused the plaintiff to purchase a product or service that the plaintiff would not otherwise have purchased, even if the product or service was not worth less than what the plaintiff paid?

### ORDER

Under Rule 5 of the Nevada Rules of Appellate Procedure, we respectfully certify to the Supreme Court of Nevada the questions of law set forth in Section III of this order. These questions will be determinative of claims pending before this court, and it appears to us that there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of Nevada. Nev. R. App. P. 5(a).

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

I.

This suit arose after plaintiffs Aaron Leigh-Pink and Tana Emerson stayed at the Rio All-Suite Hotel and Casino (the "Rio") in Las Vegas. The rooms were complimentary, so the only charge that plaintiffs incurred was a $34.01 per day "resort fee" that covered access to the internet, telephones, and use of the fitness room. At first, the stays seemed uneventful. But unbeknownst to plaintiffs, the Rio's water system had been contaminated with *legionella*, the bacteria that cause Legionnaires' disease.

Plaintiffs allege that the Rio knew of that contamination based on the following allegations. Before plaintiffs visited the hotel, the Rio had received a letter from the Southern Nevada Health District ("SNHD") stating that two guests had contracted Legionnaires' disease. SNHD investigators met with both the Rio's Vice President and its Facilities Senior Manager. The investigators stated that they planned to conduct an "environmental assessment," and at a follow-up meeting, they gave a PowerPoint presentation on the dangers of the bacteria. Yet that same day, plaintiffs allege, the Rio refused to remove "at least one guest" from a room that the SNHD wanted to test for *legionella*.

A few months later, the Rio sent a letter notifying previous guests of the contamination. It reported that two guests had contracted Legionnaires' disease and that "recent testing indicated the presence of the *Legionella* bacteria in water systems at the Rio." The hotel claimed to have taken "aggressive remediation action to ensure the safety of the water," but it admitted that "[u]ntil the system was fully treated, taking a shower or bath with the jets running may have put [guests] at risk by breathing water in the air." The Rio did not share that same information with any incoming guests.

A guest soon commenced this putative class action in Clark County District Court.  After removal, Leigh-Pink and Emerson became the named plaintiffs.  They had not contracted Legionnaires' disease, but based on the Rio's alleged failure to disclose the *legionella*, they sought to recover the resort fee.  Their operative complaint asserted claims for (1) fraudulent concealment, (2) negligence, (3) unjust enrichment, (4) "declaratory relief," and (5) two consumer fraud claims under Nevada Revised Statutes ("NRS") § 41.600.  These two consumer fraud claims derive from NRS § 205.377(1), which prohibits "fraud or deceit upon a person by means of a false representation or omission of a material fact," and NRS § 598.0923(2), which prohibits failures "to disclose a material fact in connection with the sale or lease of goods or services."  The district court dismissed for failure to state a claim, and this appeal followed.

In a separate memorandum filed concurrently with this opinion, we reverse the dismissal of the claim for unjust enrichment and affirm the dismissal of the claims for negligence, declaratory relief, and violations of NRS § 205.377(1).  We also reject all but one of the Rio's arguments regarding the claims for fraudulent concealment and violations of NRS § 598.0923(2).  The memorandum leaves one remaining issue that is addressed here: whether plaintiffs have suffered damages for purposes of their claims for fraudulent concealment and violations of NRS § 598.0923(2).

## II.

The district court concluded that plaintiffs did not suffer any damages.  The court noted that plaintiffs did not allege personal injury or property damage, which meant that the damages, if any, "were economic in nature."  The resort fee

could not fall within that category, the court continued, since plaintiffs received access to the amenities that the fee covered. Thus, plaintiffs received the "benefit of the bargain" and suffered no damages.

The Rio echoes that analysis on this appeal. It contends that the only appropriate measures of damages are (1) "the out-of-pocket measure, which, in the misrepresentation context, is comprised of 'the difference between what the defrauded party gave and what he actually received'"; and (2) "[t]he benefit-of-the-bargain measure, which consists of 'the value of what the defrauded party would have received had the representations been true, less what he actually received.'" *Davis v. Beling*, 278 P.3d 501, 512 (Nev. 2012) (alterations adopted) (quoting *Collins v. Burns,* 741 P.2d 819, 822 (Nev. 1987) (per curiam)). Under either measure, the Rio argues, plaintiffs cannot recover because they never alleged that access to the internet, telephones, and fitness room was worth less than the $34.01 they paid. In short, plaintiffs did not suffer damages because they "received exactly what they paid for."

Plaintiffs respond with a simple but untested theory. They point to their allegation that they would not have stayed at the Rio – and would not have paid the resort fee – had the Rio disclosed the *legionella* contamination. Thus, say plaintiffs, they "have alleged recoverable damages in the form of the money they paid to the Hotel which they would not otherwise have paid."

We do not understand Nevada courts to have addressed this issue of damages – *i.e.*, whether a plaintiff suffers damages when, due to the defendant's misrepresentation, the plaintiff purchases a product or service that the plaintiff would not otherwise have purchased, even though the

product or service was not worth less than what the plaintiff paid.

In other cases, this court has observed that "[w]here Nevada law is lacking, its courts have looked to the law of other jurisdictions, particularly California, for guidance." *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1145 (9th Cir. 2004) (quoting *Mort v. United States,* 86 F.3d 890, 893 (9th Cir. 1996)).  This court, too, has looked to California "to inform [its] analysis" of Nevada law.  *Id.* Here, the most instructive California case is *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).  It concerned a defendant that labeled its products as "Made in U.S.A." even though they "contained foreign-made parts or involved foreign manufacture."  *Id.* at 881.  The plaintiffs did not allege that the products were overpriced or defective; they instead relied on their "patriotic desire to buy fully American-made products."  *Id.* at 883.  The court held that "plaintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of" California's Unfair Competition Law.  *Id.* at 881.

The federal district court in Nevada has followed this lead.  In *Cruz v. Kate Spade & Co., LLC*, No. 2:19-cv-952, 2020 WL 5848095, at *1 (D. Nev. Sept. 30, 2020), the court addressed allegations that the defendant had "indicat[ed] the items [it sold] were significantly discounted from the prices listed on the tags" when, in fact, the items were "never actually sold at the reference price marked on the tags."  The plaintiff did not allege that the items were worth less than what she paid.  *Id.* at *5.  Yet she insisted "that she did not get the deal she thought she was getting," and she alleged that she would not have purchased the items "had she known

their true market value." *Id.* at *1. The district court concluded that the plaintiff had adequately pleaded damages for purposes of a consumer fraud claim under NRS § 41.600. *See id.* at *5; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104–05 (9th Cir. 2013) (holding that similar allegations were sufficient to establish that a plaintiff "lost money or property" under California's Unfair Competition Law).

These authorities do not reflect a consensus, for courts in other jurisdictions have rejected plaintiffs' theory. *See Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) (rejecting the idea that, without more, "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices" have suffered an injury under the state's consumer fraud statute); *see also Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019) (reaching the same conclusion under Illinois law); *In re Avandia Mktg. Sales Pracs. & Prod. Liab. Litig.*, 639 F. App'x 866, 869 (3d Cir. 2016) (reaching the same conclusion under Missouri law).

We thus face a question that involves matters of state law and policy that have not been addressed by the Supreme Court or Court of Appeals of Nevada, and that have divided courts in other jurisdictions. Because we believe that these questions are best resolved by the highest court in Nevada, we conclude that certification is appropriate.

### III.

The question of law we certify is:

> For purposes of a fraudulent concealment claim, and for purposes of a consumer fraud claim under NRS § 41.600, has a plaintiff

suffered damages if the defendant's fraudulent actions caused the plaintiff to purchase a product or service that the plaintiff would not otherwise have purchased, even if the product or service was not worth less than what the plaintiff paid?

We do not intend this framing to restrict the Supreme Court's discretion. Should it accept certification, it may reformulate the question and consider any other issues it deems relevant. *See, e.g.*, *United States v. Figueroa-Beltran*, 892 F.3d 997, 1004 (9th Cir. 2018).

IV.

We respectfully request that the Supreme Court of Nevada accept and decide the question certified herein. The clerk of this court shall forward a copy of this order, under official seal, to the Supreme Court of Nevada, along with copies of all briefs and excerpts of the record that have been filed in this court. We recognize that, should the Supreme Court of Nevada accept certification, "[t]he written opinion of the Supreme Court stating the law governing the questions certified . . . shall be res judicata as to the parties." Nev. R. App. P. 5(h).

Further proceedings in our court are stayed pending resolution of the Supreme Court's decision whether to accept the certified question and, if so, the receipt of the answer to the certified question. The clerk is directed to administratively close this docket, pending further order. The panel will resume control and jurisdiction on the certified question upon receiving an answer to the certified question or upon the decision to decline to answer the question.

The parties shall notify the clerk of this court within 14 days of any decision by the Supreme Court of Nevada to accept or decline certification. If the Supreme Court accepts certification, the parties shall file a joint status report every six months after the date of acceptance, or more frequently if the circumstances warrant. As required by Rules 5(c)(4) and 5(c)(5) of the Nevada Rules of Appellate Procedure, we have provided in the appendix the names and addresses of counsel and have designated which party will serve as the appellant and the respondent should the Supreme Court of Nevada accept certification.

IT IS SO **ORDERED**.

/s/ Brian M. Cogan

Brian M. Cogan, District Judge

# APPENDIX

For Appellants Aaron Leigh-Pink and Tana Emerson:

Robert A. Waller, Jr., Law Office of Robert A. Waller, Jr., P.O. Box 999, Cardiff-by-the-Sea, CA 92007.

For Respondent Rio Properties, LLC:

Richard Fama, Cozen O'Connor P.C., 45 Broadway Atrium, Suite 1600, New York, NY 10006.

F. Brenden Coller, Cozen O'Connor P.C., 1650 Market Street, Suite 2800, Philadelphia, PA 19103.