In the

# United States Court of Appeals
## For the Seventh Circuit

No. 20-3021

LAURA MULLEN,

*Plaintiff-Appellant,*

*v.*

GLV, INC.; RICK BUTLER; and CHERYL BUTLER,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 1465 — **Matthew F. Kennelly**, *Judge.*

ARGUED OCTOBER 25, 2021 — DECIDED JUNE 23, 2022

Before EASTERBROOK, ROVNER, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* This suit has dwindled away. It began as a nationwide class action on behalf of all customers of GLV, which operates in several states as Sports Performance Volleyball Club. The district court certified a class limited to customers of GLV's locations in Illinois. 330 F.R.D. 155 (N.D. Ill. 2019). Later the judge concluded that Laura Mullen, who asserts that GLV committed fraud, is an unsuitable representative of that class and invited her to find a substitute.

She didn't. Although the class was never decertified, Mullen's counsel conceded at argument that this is now an individual rather than a representative suit. She lost because the judge concluded that she had not been injured—which made her a bad representative to boot. 488 F. Supp. 3d 695 (N.D. Ill. 2020); 334 F.R.D. 656 (N.D. Ill. 2020). See also *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) (injury is essential to recovery in class litigation). Mullen also has dropped many of the substantive theories she presented in the district court.

This suit's fade-out after the fashion of the Cheshire Cat raised jurisdictional questions, because all litigants are citizens of Illinois, the claim rests on state law, and the remaining stakes are modest. The sole asserted basis of federal jurisdiction is the Class Action Fairness Act, which applies to class actions with more than 100 class members, stakes exceeding $5 million, and minimal diversity of citizenship. 28 U.S.C. §1332(d)(2). But when the claim is predominantly on behalf of citizens of a single state, a district court often may or must decline to exercise that jurisdiction. Given the class definition, which is limited to customers who purchased services in Illinois, we wondered whether these limitations apply. The district court did not discuss the possibility, and the parties ignored it, so we ordered the filing of supplemental briefs.

Section 1332(d)(4) says that "[a] district court shall decline to exercise jurisdiction" when more than two-thirds of the proposed class members "are citizens of the State in which the action was originally filed" and other conditions are met. "Shall" is a mandatory term, especially when contrasted with §1332(d)(3), which says that district courts "may … decline to exercise jurisdiction" in certain circumstances. Still, both (d)(3) and (d)(4) say "decline to exercise jurisdiction". These

subsections address how the jurisdiction granted by §1332(d)(2) should be managed. This makes them more like abstention doctrines than limitations on subject-matter jurisdiction. See *Morrison v. YTB International, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *Graphic Communications Union v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011). And, because they are abstention rules, they need not necessarily be enforced by a court of appeals on its own, when the parties have overlooked them.

That they *can* be enforced without a request by a litigant follows from their classification as abstention doctrines. The Supreme Court has held that abstention "may be raised by the court *sua sponte.*" *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976). See also *International College of Surgeons v. Chicago*, 153 F.3d 356, 360–61 (7th Cir. 1998); Charles Alan Wright et al., 17A *Federal Practice and Procedure* §4243 at 360 ("The court may decide on its own motion to abstain"), §4245 at 411 (3d ed. 2007).

As it happens, however, the litigation depicted in the appellate briefs is as the district judge shaped it—that is, as a one-state class (with perhaps some people who drove into Illinois for volleyball, but surely more than two-thirds citizens of Illinois). The initial pleading asked the district court to certify a national class, and perhaps half of GLV's business is conducted outside Illinois. Jurisdiction depends on the state of matters when a suit begins. See, e.g., *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). This means that the requirements for jurisdiction under §1332(d)(2) have been satisfied. See, e.g., *In re Burlington Northern Santa Fe Ry.*, 606 F.3d 379, 381 (7th Cir. 2010).

If abstention under §1332(d)(4) also depends on the original complaint, then it would be inappropriate to dismiss this lawsuit. But *does* abstention follow the same date-of-filing norm as the rule that controls the existence of subject-matter jurisdiction, or does abstention depend on the class the district judge certifies (if any) and other circumstances that may change as the case proceeds? There appears to be a conflict among the circuits on that question. Compare *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 428 (5th Cir. 2014) (assessment of circumstances at the time suit begins), with *Kaufman v. Allstate New Jersey Insurance Co.*, 561 F.3d 144 (3d Cir. 2009) (assessment of circumstances at the time a court decides whether to abstain). Precisely because abstention, even under §1332(d)(4), is discretionary when no one asks the court to abstain, we mark this subject as one needing attention—the parties did not address it, even in their post-argument briefs—and move to decision on the merits.

Rick Butler is among the country's most successful volleyball coaches. Literature and websites promoting Sports Performance Volleyball Club (the Club) tout his success and assert that other members of the staff are "extremely qualified." The Club's teams and graduates have won multiple national championships. Mullen does not contend that any of these statements is false. Instead she observes that the Club's promotional material is silent about the conclusions of two bodies—the Illinois Department of Children and Family Services and USA Volleyball—that in 1981, 1984, and 1987 Butler had sexual intercourse with at least three underage girls he was training. The Department and USA Volleyball both found, in reports issued in 1995, that the sexual relations were immoral and unethical, whether or not they were lawful. Butler maintains that the girls were 18 and the encounters consensual.

Mullen contends that Illinois law requires GLV to notify all potential customers that Butler is a rapist (as Mullen describes the 1980s events), though he has never been charged with a crime. Between 2013 and 2018 Mullen enrolled her two daughters in programs conducted by the Club (some by Butler personally), and she maintains that she would not have done this (or would not have paid as much) had the Club featured Butler's sexual history with the same clarity as it trumpets the achievements of athletes he has trained.

Mullen lost on summary judgment, however, because she concedes knowing about the Department's and USA Volleyball's findings. These reports were not buried in desk drawers and forgotten. They have been discussed in public repeatedly. There is even a Wikipedia page devoted to the subject: https://en.wikipedia.org/wiki/Rick_Butler_sexual_abuse_allegations. The page links to many public airings of the accusations and findings. Mullen herself participated in online discussions of this topic, and she posted messages that boil down to a view that the Club's high-quality programs make events of years ago less important. (No one has accused Butler of any sexual misconduct since the 1980s, though he has coached thousands of girls and women.) Mullen enrolled one of her daughters in one of the Club's programs in 2018, after she filed this suit. All of this made Mullen a poor representative of parents who may have enrolled daughters in ignorance, the district judge thought, and ultimately scuttled Mullen's substantive claims because she could not show injury.

Mullen replies that, although she knew about findings adverse to Butler, she just didn't believe them—and wasn't prepared to believe them unless Butler confessed on the Club's own website. Mullen does not say that she confronted Butler

or any employee of the Club with the findings and received a false answer. Instead she says that Illinois law requires the Club to proclaim Butler's guilt as a condition of doing business and that this principle entitles her to damages no matter what she knew. The district judge was not persuaded, writing that neither a state statute nor the common law requires a person who disputes the accuracy of allegations made against him to affirm his own guilt. The judge added that claims of fraud, whether under a statute or the common law, require proof of a guilty state of mind, and he found that the evidence shows "that the Butlers subjectively believed that despite Rick's past, he was qualified to coach girls in volleyball, and Mullen does not point to any evidence supporting a contrary inference." 488 F. Supp. 3d at 708.

Mullen's principal argument on appeal is that, whatever may be true for common-law claims, two statutes dispense with both proof of *scienter* and any need to show detrimental reliance on material omissions. She is right about the latter proposition. The Supreme Court of Illinois has held that the Illinois Consumer Fraud Act does not require a plaintiff to show reliance but does require the plaintiff to show that a fraud proximately caused injury. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996). The need to show injury is in the statute's own text, for it limits recovery to loss that is "a result of a violation of [the] Act." 815 ILCS 505/10a(a). See also, e.g., *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019); *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 372 (1998). That is equally true of the Illinois Physical Fitness Services Act, which provides a remedy for any "customer injured by" a violation of the statute. 815 ILCS 645/11. Both laws thus require the plaintiff to show that she was "in some manner, deceived" by a misrepresentation or

material omission. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002). A plaintiff can't show deception just by contending that she kept an open mind about formal findings of which she was well aware; Mullen does not contend that she actually believed the *contrary* of those findings, or that defendants ever lied to her face, so she cannot show injury.

Like the district judge, we do not take any position on whether the reports are right about what happened in the 1980s, let alone on whether Butler's behavior was ethical even if the girls had reached the age of 18. Nor do we decide whether a parent who was unaware of the findings adverse to Butler could state a claim under Illinois law. It is enough to observe that no one who professed ignorance stepped in to replace Mullen as a potential class representative. This class was never decertified, but in practice this became an individual suit by Mullen alone. GLV's other customers were not notified and given an opportunity to opt out, so the judicial decisions cannot affect them. Today's outcome does not bind any other person whose children attended the Club. On that understanding, the judgment is

AFFIRMED.